IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| ELLIOT TRAVIS BACON, | CV 25–12–H–DWM |
| Plaintiff, | |
| vs. | OPINION and ORDER |
| SGT. TAYLOR, SGT. HIGHLEY, and JIM SALMONSEN, | |
| Defendants. | |

On February 10, 2025, Plaintiff Elliot Travis Bacon, a state prisoner

proceeding without counsel, filed a civil rights complaint under 42 U.S.C. § 1983,

alleging violations of his constitutional rights while he was incarcerated at

Montana State Prison.  (Docs. 1, 2.)  Bacon alleges that defendants imposed

unlawful punishments and retaliated against him when he filed grievances.  (*See*

*generally,* Doc. 2.)  On May 26, 2026, Defendants filed a motion for summary

judgment, (Docs. 28–30), accompanied by the requisite Rand notice, (Doc. 31).

Bacon opposes.  (Docs. 33, 34.)  Defendants' motion is granted in part and denied

in part as explained below.

1

## BACKGROUND

The following facts are undisputed unless otherwise noted, (*see* Doc. 30)[1], and viewed in the light most favorable to Bacon, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam).

Bacon was an inmate at the Montana State Prison (the "Prison") between July 26, 2023, and August 27, 2024. (Doc. 30 at ¶ 1.) Between June 20, 2024, and August 27, 2024, Defendant Clifton Taylor was assigned to work in the same unit where Bacon resided on six days: June 21, 22, 23, 28, 29, 30. (*Id.* ¶ 45.) On May 24, 2024, Bacon received a minor disciplinary writeup for being in possession of another inmate's television. (*Id.* ¶ 9.) At a hearing on May 26, he pled guilty to the charge and was sanctioned to seven hours of extra duty. (*Id.* ¶ 10.) That same day, Taylor, as part of the extra duty sanction, forced Bacon to cut grass with scissors for approximately one hour. (*Id.* ¶¶ 11, 15.) Bacon did not grieve this incident until he informed Disciplinary Hearings Officer Carrie Walstead on June 20. (*Id.* ¶¶ 12–13.) Bacon never complained of any injury to his hands, (*id.* ¶¶ 17–24), and he never grieved a lack of medical care, (*id.* ¶ 22).

On June 28, 2024, Bacon failed to provide an adequate urine sample for testing. (*Id.* ¶ 31.) The next day, officers received three anonymous kites

---

[1] Because Bacon did not file a statement of disputed facts as required by the Local Rules of this Court, the facts as presented by Defendants are generally accepted as undisputed. *See* D. Mont. L.R. 56.1(d).

indicating that Bacon was trying to manipulate the testing. (*Id.*) As a result, Bacon was asked to provide another sample on June 30. (*Id.*) At that time, officers noted that Bacon was wearing more layers of clothing than is permitted by the regulations so asked him to remove his layers one at a time; Bacon refused. (*Id.*) He also did not provide an adequate urine sample. (*Id.*) As a result, on June 30, Bacon received a major disciplinary writeup for refusing to provide a urine specimen and refusing to obey direct orders. (*Id.* ¶ 30.) Procedure 3.1.20 governs the inmate drug testing program and provides that inmates will be cited for a rule infraction if they fail to provide an adequate urine sample. (*Id.* ¶¶ 25–28.) Defendants Taylor and Daniel Highley were involved in that writeup. (*Id.* ¶ 32.)

On July 2, 2024, Bacon was found guilty at a disciplinary hearing regarding the incident and received a sanction of 15 days detention. (*Id.* ¶¶ 33–34.) Bacon appealed, and the decision was upheld on July 24. (*Id.* ¶¶ 35–36.) Bacon also filed an informal resolution request form with respect to the June 30 incident, and an investigation was granted. (*Id.* ¶ 37.) Following an investigation, Defendant Warden Jim Salmonsen granted Bacon a rehearing and directed the hearing officer to dismiss the writeup. (*Id.* ¶ 39.) Warden Salmonsen felt Taylor had acted inappropriately and unprofessionally when he required Bacon to cut grass with scissors on May 26. (*Id.* ¶ 40.) Warden Salmonsen viewed the dismissal of the June 30 writeup as a gesture of goodwill to show Bacon that Salmonsen did not

3

condone Taylor's prior actions. (*Id.*)

On August 27, 2024 Bacon was transferred from the Prison to Crossroads Correctional Center ("Crossroads") as part of the Prison's population management. (*Id.* ¶¶ 2–3.)

On February 10, 2025, Bacon filed the present lawsuit, alleging violations of his First, Eighth, and Fourteenth Amendment rights associated with the May 26 incident, the June 30 incident, and his subsequent August 27 transfer to Crossroads. (Doc. 2.) On April 5, 2026, Bacon discharged the custodial portion of his sentence. (Doc. 30 ¶ 4.) On May 26, 2026, Defendants filed a motion for summary judgment, (Doc. 28), accompanied by a brief in support, (Doc. 29); a statement of undisputed facts, (Doc. 30); exhibits, (Docs. 30-1 to 30-8); and a Rand notice, (Doc. 31). On June 23, 2026, Bacon filed his response in opposition. (Doc. 33; *see also* Doc. 34.) Bacon did not file a statement of disputed facts as required by the Local Rules. *See* D. Mont. L.R. 56.1(b). Nor did he file any exhibits.

## ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it impacts the outcome of the case in accordance with governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine "if the

4

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014). Nonetheless, the nonmoving party must identify, with some reasonable particularity, the evidence that it believes precludes summary judgment. *See Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (explaining that while pro se parties are exempted from "*strict* compliance with the summary judgment rules," they are "not exempt[ed] . . . from *all* compliance," such as the requirement to identify or submit competent evidence in support of their claims).

Defendants assert that they are entitled to summary judgment on the grounds that (1) Bacon failed to administratively exhaust his claims regarding the May 26, 2024 incident, the subsequent lack of medical care, and his August 27, 2024 transfer; (2) Bacon cannot show retaliation; (3) Bacon cannot recover for mental or emotional injury and the May 26, 2024 incident was not cruel or unusual punishment; and (4) there was no due process violation. Those arguments are addressed in turn.

## I.    Exhaustion

Defendants first argue that summary judgment is warranted because Bacon failed to exhaust his administrative remedies regarding the May 26, 2024 incident, the subsequent lack of medical care, and his August 27, 2024 transfer. Pursuant to

the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. §] 1983 . . . or any other federal law[] by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  This means "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  Exhaustion is mandatory.  *Booth v. Churner*, 532 U.S. 731, 741 (2001); *Jones v. Bock*, 549 U.S. 199, 211 (2007).  Under the PLRA, prison regulations define the exhaustion requirements.  *Jones*, 549 U.S. at 218.

The defendant bears the ultimate burden of proving failure to exhaust.  *See id.* at 216.  If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).  Thus, once the defendant has carried his burden, the prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

Here, the grievance process at the Prison is governed by Operational Procedure 3.3.3, which states that the process must be initiated through the filing of an informal resolution form submitted "within five working days of the action or omission that caused the complaint." (Doc. 30-2 at 4.)  If the inmate is not satisfied with the informal response he receives, he may then file a formal grievance within five days.  (*Id.*)  He may then appeal to the Warden within five days of receiving a response to his formal grievance.  (*Id.* at 6–7.)  Although the response process is slightly different in the context of grievances regarding medical care, these same deadlines apply.  (*Id.* at 8.)

Here, the record shows that Bacon is aware of Procedure 3.3.3 as he has utilized it on numerous occasions while at the Prison.  (*See generally*, Doc. 30-4.) Relevant here, Bacon did not initiate the grievance process for the May 26, 2024 incident until June 20, 2024.  (*See* Doc. 30-8 at ¶ 9.)  Defendants therefore argue that he is barred from making any claims based on that incident.  However, as argued by Bacon, Defendants accepted and processed his untimely grievance, granting his request for an investigation into Taylor's conduct.  (*See* Doc. 30-4 at 4.)  It then appears the Prison did in fact investigate the incident, including reviewing photographs of the yard where Bacon was required to cut the grass. (Doc. 30-8 at 5–17.)  Because the Prison accepted his grievance and granted it, Bacon exhausted his administrative remedies under Procedure 3.3.3 as it relates to

7

the May 26, 2024 incident.  (*See* Doc. 30-2 at 3 ("If an inmate's action request is granted, he will not be allowed to appeal the decision, and it is understood he has exhausted all administrative remedies.").)

On the other hand, Bacon never grieved a subsequent lack of medical care, (*see* Doc. 30-7 at ¶¶ 6–8), or his transfer to Crossroads, (*see generally* Doc. 30-4 (Bacon's grievance file).).  Nor has Bacon presented any evidence or argument to excuse that failure.  Accordingly, any claims based on those actions is barred.

## II.    Count 1: Retaliation

Courts "have long recognized that a corrections officer may not retaliate against a prisoner for exercising his First Amendment right to report staff misconduct." *Shepard v. Quillen*, 840 F.3d 686, 688 (9th Cir. 2016).  However, courts also recognized that they "must defer to reasonable decisions of prison officials." *Id.* (citing *Turner v. Safley*, 482 U.S. 78, 84–85 (1987)).  Accordingly, a prisoner claiming retaliation must show that "(1) a state actor took some adverse action (2) because of (3) the prisoner's protected conduct, that such action (4) chilled his exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id.* (cleaned up); *see Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).  To establish causation, "a plaintiff must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271

(9th Cir. 2009) (internal quotation marks omitted).  And, as it relates to the final factor, the Supreme Court has cautioned that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment." *Sandin v. Conner*, 515 U.S. 472, 482 (1995).

As to the first requirement, "Defendants do not dispute that Bacon engaged in a protected activity when he initiated the grievance process against Defendants Taylor and Highley on June 20 and 30, 2024." (Doc. 29 at 15); *see Bird v. Dzurenda*, 131 F.4th 787, 791 (9th Cir. 2025) ("complaints about the actions of prison officials [are] easily [] within the realm of 'protected conduct'").  As to the second requirement, Bacon's claim appears to be based on two adverse actions: the June 30, 2024 disciplinary writeup and his August 27, 2024 transfer to Crossroads. (*See* Doc. 23 at 1–2.)  As discussed above, Bacon has failed to exhaust any claim related to the transfer decision, so it cannot form the basis of his retaliation claim. Thus, the retaliation analysis centers on the June 30, 2024 writeup.  *See Hines v. Gomez*, 108 F.3d 265, 268–69 (9th Cir. 1997) (recognizing that a disciplinary charge may constitute adverse action).  False or unwarranted disciplinary complaints can be sufficiently chilling to meet the fourth requirement above.  *See Watison v. Carter*, 668 F.3d 1108, 1115 (9th Cir. 2012).  Thus, the survival of Bacon's claim turns on the second and final requirements, causation and retaliatory motive.  Because the record surrounding these elements is mixed, summary

9

judgment is not appropriate.

On the one hand, there is evidence of a nonretaliatory motive behind Defendants' conduct. Bacon returned an insufficient urine specimen on June 28 and, on June 29, Defendants received three anonymous "kites" from other inmates indicating that Bacon was trying to avoid future testing by utilizing someone else's "clean piss." (Doc. 30-8 at 20, 24–26.) He then failed to provide an adequate sample on June 30 and refused to show Defendants what was under his layers of clothing. (*Id.* at 18, 20, 22.) He was therefore written up for these two actions. (*Id.* at 18.) The Ninth Circuit has previously recognized that non-random drug testing may be reasonably related to the legitimate penological interest of "curb[ing] the use and flow of drugs among" inmates. *Thompson v. Souza*, 111 F.3d 694, 701–03 (9th Cir. 1997). These facts support such a finding here. *See Wood v. Washburn*, 2025 WL 66046, at *3 (9th Cir. Jan. 10, 2025) (upholding finding of "legitimate penological purpose in disciplining [the plaintiff] for fail[ing] to pass a drug test").

On the other hand, there is also evidence of a retaliatory motive. While timing alone is insufficient to support an inference of retaliatory intent, *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995), timing can be circumstantial evidence of such intent, *McCollum v. Cal. Dep't of Corr. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011). Ten days before the writeup, on June 20, Bacon reported the May 26,

10

2024 incident.  (Doc. 30-8 at 2.)  A day later, on June 21, the Prison reviewed camera footage of the incident, which confirmed Bacon's report and resulted in the Prison describing the conduct as "worrisome." (*Id.* at 5.)  And, on June 30, the day of the writeup, Bacon asserts that he directly told Taylor and Hickley that he had an active grievance against Taylor.  (Doc. 2 at 10–11.)  Additionally, the June 30, 2024 writeup was ultimately dismissed in August 2024 on Warden Salmonsen's directive: "Remand for rehearing—please dismiss *inmate was targeted.*"  (Doc. 30-8 at 28 (emphasis added); *id.* at 29 (dismissal decision).)  While Warden Salmonsen maintains that his decision was merely a "goodwill" gesture, (*id.* at 3–4), on this record, the Court "cannot determine as a matter of law that [the June 30, 2024 writeup] was justified by the [P]rison's legitimate interests." *Jones v. Williams*, 791 F.3d 1023, 1036 (9th Cir. 2015).

Accordingly, Defendants' motion for summary judgment is granted in part and denied in part as it relates to Count 1.  Bacon may proceed to trial on his First Amendment retaliation claim based on the June 30, 2024 writeup.

## III.    Count 2: Eighth Amendment

Bacon's Eighth Amendment claim is based on the May 26, 2024 incident wherein Taylor forced him to use child-safe scissors to cut grass in the yard.  (*See* Doc. 23 at 2.)  Defendants argue that this claim fails because Bacon cannot proceed in the absence of physical injury, and humiliation or embarrassment alone

is insufficient to establish an Eighth Amendment violation.  Defendants further argue that Bacon has failed to show that either Warden Salmonsen or Sergeant Highley were affirmatively involved in the May 26 incident.  With limited exception, Defendants' motion for summary judgment is denied as to this claim.

### A.   Mental/Emotional Injury

Defendants first argue that Bacon cannot maintain his Eighth Amendment claim in the absence of physical injury, citing 42 U.S.C. § 1997e(e).  Section 1997e(e) states that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . .."  A "physical injury" in this context "need not be significant but must be more than *de minimis*."  *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002).  Here, even accepting Bacon's sworn statement that he "sustained blisters, cuts, and lasting injury to his hands and knees after being forced to cut grass with scissors," (Doc. 33 at 2; *see id.* at 3 (declaring that his filing was made under penalty of perjury)), such injuries are not more than *de minimis*.  *See Oliver*, 289 F.3d at 629 (finding that general leg and back pain and a canker sore were not more than *de minimis*).  However, "§ 1997e(e) applies only to claims for mental and emotional injury."  *Oliver*, 289 F.3d at 630.  To the extent Bacon's claims for compensatory or nominal damages are premised on the alleged violation of his

Eighth Amendment rights, "not on emotional or mental distress suffered as a result of those violations, § 1997e(e) is inapplicable and those claims are not barred." *Id.*

Accordingly, Defendants' motion for summary judgment is granted on the limited grounds that Bacon may not present evidence of emotional or mental injury for damages purposes; such evidence may be admissible and relevant, however, for establishing liability for this claim.

## B.    Merits

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. *See Helling v. McKinney,* 509 U.S. 25, 31, (1993); *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble,* 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when two requirements are met: (1) objectively, the official's act or omission is so serious that it "result[s] in the denial of the minimal civilized measure of life's necessities," *Farmer,* 511 U.S. at 834 (internal quotation marks and citation omitted), and (2) subjectively, the prison official acts with "deliberate indifference," which requires a showing the official acted unnecessarily and wantonly for the purpose of inflicting harm, *id.* at 837. "[T]he official must both be aware of facts from which the inference could be

13

drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Here, the second element is met because ordering Bacon to cut grass with child-safe scissors serves no legitimate purpose other than to embarrass and humiliate him. "Such acts are reprehensible and intolerable in our society, including in the prison environment." *Farris v. Frisk*, 2013 WL 4676502, at *2 (E.D. Cal. Aug. 30, 2013). The first element poses a closer question. "What is necessary to show sufficient harm for the purposes of the Cruel and Unusual Punishments Clause depends upon the claim at issue[.]" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is therefore contextual and responsive to 'contemporary standards of decency.'" *Id.* (quoting *Estelle*, 429 U.S. at 103). The Supreme Court has provided two guideposts for this analysis. On the one hand, "extreme deprivations are required to make out a conditions-of confinement claim . . . [b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 9 (internal quotation marks omitted). On the other hand, "[i]n the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." *Id.* (citation omitted).

14

Here, because the conduct at issue exceeds the bounds of "routine discomfort" but falls short of the "use of force to cause harm," it is not clear where this case falls between these poles. Nor is other case law determinative. For example, "the exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons" of which "[courts] do not approve," but does not violate the Eighth Amendment. *Somers v. Thurman,* 109 F.3d 614, 622 (9th Cir.1997) (internal quotation marks omitted). Similarly, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Watison,* 668 F.3d at 1113. But this case does not fit neatly into either category. It is unclear from the present record whether Bacon's punishment was an "extraordinary sanction far, far outside the pale of that customarily imposed by [the Prison] as a disciplinary sanction." *Roberts v. Cox,* 2010 WL 3522365, at *3 (D. Nev. Aug. 31, 2010); *see also Harris v. Maloughney,* 827 F. Supp. 1488, 1494 (D. Mont. 1993) ("The Constitution protects individuals from arbitrary governmental action, and from discipline which is in the form of punishment or retaliation, where legitimate governmental interests are lacking."); *Dearman v. Woodson,* 429 F.2d 1288, 1290 (10th Cir. 1970) (identifying the relevant inquiry as whether treatment "amounts to clear abuse or caprice"). There is evidence to indicate that it was. (*See* Doc. 30-8 at 3 (the Warden indicating that he "did not approve" of the sanction); *id.* at 5 (Prison personnel describing the sanction as "worrisome").) It is

15

therefore necessary to put this question to a jury. Summary judgment is denied.

### C.    Warden Salmonsen and Sergeant Highley

A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§]1983." *Id.; see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Here, because there is no evidence that either Warden Salmonsen or Sergeant Highley[2] participated in the May 26, 2024 sanction, or knew of it and failed to prevent it, they are entitled to summary judgment on Bacon's Eighth Amendment claim.

## IV.    Count 3: Fourteenth Amendment

Although Bacon's Complaint states the legal standard for a procedural due process claim, (*see* Doc. 2 at 8–9), neither that pleading nor his pretrial statement

---

[2] Sergeant Highley signed both the "Notice of Hearing" section of the May 24, 2024 "Disciplinary Infraction Report," (Doc. 30-8 at 6), and the May 26, 2026 "Disciplinary Hearing Decision," (*id.* at 7). However, there is no    evidence that he was involved in the subsequent decision to impose the specific sanction at issue.

16

identifies the factual basis upon which it is made, (*see also* Doc. 23).  Due process is not even mentioned in his pretrial statement.  (*See id.*)  In Bacon's response to the present motion, he states: "Plaintiff alleges arbitrary punishment, abuse of authority, improper disciplinary actions, and procedural irregularities.  Whether Defendants deprived Plaintiff of a protected liberty interest without due process presents factual questions that should be resolved at trial." (Doc. 33 at 2; *see also* Doc. 34 at 2.)  It therefore appears his procedural due process claim, like his Eighth Amendment claim, is based on the May 26, 2024 incident.

"To establish a due process violation, an inmate must demonstrate that he has been deprived of a protected liberty or property interest by arbitrary government action." *Ward v. Ryan*, 623 F.3d 807, 813 (9th Cir. 2010) (internal quotation marks and alterations omitted).  The Supreme Court has clarified that "these interests . . . [are] generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  And while "prisoners do not shed all constitutional rights at the prison gate, . . . [d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485.  Under this

17

standard, the Supreme Court found no liberty interest protecting against a 30-day assignment to segregated confinement because it did not "present a dramatic departure from the basic conditions of [the inmate's] sentence." *Id.*

The disciplinary sanction imposed here—forcing Bacon to cut grass with scissors—likely fails to meet the above "atypical and significant hardship" standard. While certainly atypical, his punishment was not significant in the way courts have interpreted the term. For example, the Supreme Court has held that a 30-day term of disciplinary segregation neither affected the overall duration of the inmate's sentence nor "exceed similar, but totally discretionary, confinement in either duration or degree of restriction." *Sandin*, 515 U.S. at 486–87; *compare with Wilkinson v. Austin*, 545 U.S. 209, 221–24 (2005) (concluding that indefinite solitary confinement that disqualified an inmate from parole gave "rise to a liberty interest"). Here, Bacon was forced to cut grass in this manner for approximately an hour, (*see* Doc. 30-8), and that punishment had no impact on the duration of his sentence. Thus, Bacon fails to show he had a protected liberty interest. Even if he did, however, Bacon does not identify what process he was denied as it relates to this incident. Prior to being sanctioned on May 26, 2024, there was a disciplinary hearing, Bacon was given the opportunity to be heard, Bacon pled guilty, and the Prison issued a written decision. (*See* Doc. 30-8 at 6–7.) This is all the law requires. *See Wolff v. McDonnell*, 418 U.S. 539, 557–58 (1974).

Based on the foregoing, summary judgment is granted in favor of Defendants on Bacon's due process claim.[3]

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Defendants' motion for summary judgment (Doc. 28) is GRANTED in PART and DENIED in PART.  The motion is GRANTED as follows:

(1)    Because Bacon failed to exhaust a lack of medical care and his August 27, 2024 transfer, he may not rely on those facts to support his claims;

(2)    Bacon may not seek damages for mental or emotional injury associated with his Eighth Amendment claim (Count 2);

(3)    Bacon's Eighth Amendment claim (Count 2) is DISMISSED insofar as that claim is brought against Warden Salmonsen and Sergeant Highley; and

(4)    Bacon's procedural due process claim (Count 3) is DISMISSED in its entirety.

Defendants' motion is DENIED in all other respects.  A trial schedule will be set by separate order.

DATED this 10 day of July, 2026.

_____    08:23 A.M.
Donald W. Molloy, District Judge
United States District Court

---

[3]  Bacon has neither pled nor pursued a substantive due process claim.

19